# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TINA DEANETTE ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:12-cv-00461 |
| v. | ) | Judge Nixon / Knowles |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action.

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on January 16, 2009, alleging that she had

been disabled since March 27, 2008, due to back problems, bladder disease, interstitial cystitis,

anxiety, and depression.  Docket No.11, Attachment ("TR"), TR 125, 131, 151.  Plaintiff's

applications were denied both initially (TR 77, 78) and upon reconsideration (TR 79, 80).

Plaintiff subsequently requested (TR 94) and received (TR 105) a hearing.  Plaintiff's hearing

was conducted on November 18, 2010, by Administrative Law Judge ("ALJ") David A. Ettinger.

TR 40.  Plaintiff and vocational expert ("VE"), Lisa Courtney, appeared and testified.  *Id.*

On December 7, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 35.

Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since March 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: history of interstitial cystitis and history of urinary incontinence (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only work at jobs which

2

allow ready access to bathroom facilities.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 12, 1969 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 30-34.

On December 14, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 21. On April 10, 2012, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial

gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) erroneously found that Plaintiff's testimony was not fully credible; (2) did not evaluate her interstitial cystitis in accordance with SSR 02-2p; (3) failed to properly evaluate the opinions of Drs. Gulbenk and Mehta; and (4) incorrectly relied on the VE's testimony that Plaintiff could perform jobs that exist in significant numbers in the national economy.  Docket No. 16 at 11-14.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.* at 15.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Credibility of Subjective Complaints

Plaintiff argues that the ALJ failed to accord adequate weight to her testimony and failed to explain why he found her testimony to not be fully credible. Docket No. 16 at 13.

Defendant responds that "medical evidence starkly documented plaintiff's exaggeration of symptoms, malingering, and lack of credibility." Docket No. 17 at 13. Defendant notes that the ALJ could properly find functional limitations without fully crediting Plaintiff's testimony of disabling limitations because more than allegations are needed to prove disability and Plaintiff bears the burden of proving functional limitations. *Id.* at 11.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms. . . cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's symptoms; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the

medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

In the instant action, after considering the evidence of record, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the [stated] residual functional capacity assessment." TR 31. Discussing the evidence supporting this finding, the ALJ observed that Plaintiff appeared to be exaggerating her problems during her April 1, 2009, DDS consultative psychological examination:

> . . .The claimant described herself as nervous and "shaking" during the examination, but no shaking was observed. The claimant had a severe attack of coughing in the waiting room, but declined water or a throat lozenge. The coughing ended once it had been acknowledged, and the claimant had no subsequent cough. The claimant sat calmly completing paperwork in the waiting room, but she began rocking back and forth in her chair and chewing at her fingers once the evaluation began. She appeared to make intentional errors during testing. When asked to close her eyes and touch her nose three times, the claimant touched her nose twice and her lip once. . .

TR 32, *referencing* TR 578-581.

The ALJ further noted that in her April 1, 2009, consultative psychological evaluation, Plaintiff "acknowledged a history of alcohol abuse and acknowledged having two drinks on March 12, 2009," yet at a second consultative examination on August 6, 2009, conducted by Dr.

Doran, Plaintiff denied any alcohol consumption during the past twelve years. TR 32, *referencing* TR 577, 609.  The ALJ also noted that during the August 6, 2009 evaluation, "[t]he examiner made no diagnosis." TR 32, *referencing* TR 609.

The ALJ further articulated that, following surgery, Dr. Ezell, of Urology Associates, P.C., noted on August 29, 2006, that "Tina is delighted with her progress.  She is dry. Voiding well.  Good control. . . return in six months."  TR 31, *quoting* TR 226.  The ALJ noted that no evidence indicated that Plaintiff had received treatment for any urological problems until October 8, 2007, when she, "in total distress," reported recent recurrent urinary tract infections. TR 31-32, *referencing* TR 221-22.  The ALJ observed, however, that despite being encouraged to call her insurer for a referral, there was no evidence that Plaintiff had subsequently been seen by a urologist.  *Id.*

Regarding Plaintiff's claim that she lacked medical records of treatment because she did not have health insurance, the ALJ discussed inconsistencies within this claim as follows:

> The claimant initially testified that she had only limited medical
> treatment records because she had not had any health insurance
> since her job at Lasco Metals ended in December 2005.  She next
> testified that she had health insurance when she had surgery on
> August 14, 2006, but had not had health insurance since then.
> When asked about TennCare, she testified that she had TennCare
> coverage from 1990 until her daughter turned age 18, in August
> 2006.  When asked about the October 8, 2007, medical note which
> indicated that she had AmeriChoice health insurance and that she
> was advised to call for a network provider, she acknowledged that
> her health insurance must have continued until at least that date.
> She could not remember when her health insurance actually ended;
> she did not remember being encouraged to call for a referral to a
> participating urologist; and she had no idea why she did not see a
> different urologist after finding out that her former urologist did
> not accept her insurance.  Given the repeated inconsistencies, I do
> not find that this testimony was credible, and I find that the

> claimant's failure to receive any significant urological treatment since August 2006 is inconsistent with her allegation of disabling symptoms.

TR 32-33, *referencing* TR 52-58.

As can be seen, the ALJ's decision specifically addressed in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 31-33. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. TR 33. This is within the ALJ's province.

After assessing all of the medical and testimonial evidence, the ALJ determined that "given the repeated inconsistencies, [the ALJ did] not find that [Plaintiff's] testimony was credible." TR 33. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision. TR 31-33. The ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Compliance with SSR 02-2p

Plaintiff contends that the ALJ erroneously failed to follow SSR 02-2p, which "'provides guidance for the evaluation of claims involving [interstitial cystitis].'" Docket No. 16 at 12, *quoting* SSR 02-2p. Plaintiff maintains that interstitial cystitis "is a complex, chronic bladder disorder characterized by urinary frequency, urinary urgency, and pelvic pain," and argues that the record reflects that her "symptoms include all three." *Id.* Plaintiff asserts that the ALJ's decision is unclear as to whether he found her interstitial cystitis and urinary incontinence to be

severe impairments, because the ALJ stated, "[t]he claimant has the following severe impairments: *history of* interstitial cystitis and *history of* urinary incontinence." *Id., quoting* TR 30 (emphasis in brief). Plaintiff argues that the "implication is that these impairments once existed, but no longer exist," when in fact, the medical evidence demonstrates the existence of interstitial cystitis since January 2000, extensive treatment for this condition (including multiple surgical procedures and treatment regimens), and the continued existence of this impairment through April 27, 2010. *Id.* at 12, *citing* TR 350, 632. Plaintiff asserts that she "has experienced documented bladder problems for more than a decade, without resolution, despite multiple treatment regimens," such that the ALJ's seeming suggestion that "these problems inexplicably and spontaneously resolved in the absence of ongoing medical treatment" is erroneous. *Id.*

Plaintiff also argues that the ALJ did not cite SSR 02-2p and that the ALJ's decision is inconsistent with its provisions. *Id.* Finally, Plaintiff contends that the ALJ's imposition of the limitation that Plaintiff would require "ready access to bathroom facilities" "necessarily assumes [that she] experiences both urinary urgency and urinary frequency, two of the three primary symptoms of interstitial cystitis," but the ALJ "inexplicably" and contradictorily found that Plaintiff's subjective complaints were not fully credible. *Id.* at 13, *quoting* TR 31.

Defendant responds that the ALJ complied with SSR 02-2p's instructions concerning medically determinable impairments and the sequential evaluation. Docket No. 17 at 10. Defendant notes that, contrary to Plaintiff's assertion, the ALJ explicitly found these impairments to be severe, stating: "[t]hese impairments have more than a minimal effect on the claimant's functioning and are thus considered severe." *Id.* at 10, *quoting* TR 30. Defendant also notes that, contrary to Plaintiff's assertion that the ALJ speculated that her symptoms "spontaneously

resolved," the ALJ actually concurred with Plaintiff's report that she had a long history of interstitial cystitis and incontinence problems, but noted that, after her surgery in 2006, the record documented that complaints to her treating sources about cystitis and incontinence symptoms "fell off sharply." *Id.* at 10-11.

While Plaintiff is correct that the ALJ did not directly cite SSR 02-2p by number, Plaintiff has cited no authority for the proposition that the ALJ committed reversible error when he did not explicitly cite the SSR number in his ruling, and the Regulations do not so require. *See e.g.*, 20 C.F.R. §§404.953(a), 416.1453(a). As can be seen below, the ALJ discussed Plaintiff's alleged impairments and determined that Plaintiff's interstitial cystitis and urinary incontinence were severe. TR 31-33. Interstitial cystitis is considered a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-2p.

When evaluating Plaintiff's impairments and determining that they were severe, the ALJ discussed Plaintiff's history of incontinence:

> The claimant alleges disability due to urinary incontinence and pain which she attributes to interstitial cystitis.
>        . . .
>
> The claimant received extensive treatment for urinary infections, urinary frequency, and stress incontinence from October 22, 1997, through August 29, 2006 (Ex. 1F). Ultimately, on August 14, 2006, she underwent surgery for the following procedures at Baptist Hospital: 1. Transvaginal tape, sling urethropexy (TVTO, Obtryx); and 2. Cystoscopy with hydroistention of bladder. The claimant was seen by her treating physician on August 29, 2006, with the following notes: "Tina is delighted with her progress. She is dry. Voiding well. Good control. . . . return in six months."
>
> There is no evidence that the claimant contacted her treating

urologist or received treatment for any urological problems
elsewhere until October 8, 2007 (Ex. 1F). On that date, she called
the office of her treating urologist in total distress about recent
recurrent urinary tract infections. The note indicates that the
claimant had AmeriChoice health insurance, and her former doctor
did not participate in that plan. The claimant was encouraged to
call AmeriChoice for a referral to a participating urologist. There
is no evidence that the claimant was seen by a urologist.

TR 31-32.

Contrary to Plaintiff's assertion that the ALJ's decision is "unclear" regarding whether he

found Plaintiff's interstitial cystitis and urinary incontinence to be severe, the ALJ explicitly

stated:

**3. The claimant has the following severe impairments: history
of interstitial cystitis and history of urinary incontinence (20
CFR 404.1520(c) and 416.920(c)).**

These impairments have more than a minimal effect on the
claimant's functioning and *are thus considered severe.*

TR 30 (italics added).

Plaintiff's argument that the ALJ implied that these impairments were "spontaneously

resolved in the absence of ongoing medical treatment" (Docket No. 16 at 12) is unsupported by

the ALJ's discussion. As discussed above, the ALJ acknowledged Plaintiff's long and extensive

history of these impairments and found these impairments to be severe, but he also noted that the

complaints about, and treatment for, these impairments after Plaintiff's 2006 surgery had greatly

reduced. *See* TR 30-33. As also noted above, the ALJ discussed the later absence of treatment

evidence in the context of evaluating the credibility of Plaintiff's subjective statements of

impairment, and concluded that "[g]iven the repeated inconsistencies, I do not find that this

testimony was credible, and I find that the claimant's failure to receive any significant urological

treatment since August 2006 is inconsistent with her allegation of disabling symptoms." TR 33. There is simply nothing in the ALJ's decision to support Plaintiff's contention that the ALJ implied that these impairments "spontaneously resolved in the absence of ongoing medical treatment."

Finally, Plaintiff contends that the ALJ's imposition of a limitation requiring her to have "ready access to bathroom facilities" is contradictory to his finding that Plaintiff's complaints were not fully credible. Docket No. 16 at 13, *quoting* TR 31. As noted, the ALJ found Plaintiff's interstitial cystitis and urinary incontinence to be severe impairments. The imposition of a limitation requiring her to have "ready access to bathroom facilities," therefore, is entirely consistent with the ALJ's severity determination, which is a separate and distinct determination from his credibility determination and in no way contradictory thereto.

For the reasons discussed above, Plaintiff's contentions on these points fail.

### 3. Weight Accorded Opinion of Plaintiff's Physicians

Plaintiff questions the ALJ's consideration of the opinions of Drs. Gulbenk and Mehta. Docket No. 16 at 13. In particular, Plaintiff contends that the ALJ contradicted his finding that Plaintiff's urological conditions were severe when he described as "particularly well reasoned" Dr. Gulbenk's consultative analysis (TR 588-91), which found Plaintiff's urological condition to be nonsevere (TR 33). *Id.* Plaintiff also argues that the ALJ committed the same error as the state agency medical consultant opinions - "they fail[ed] to give adequate weight to the opinion of the examining/consulting physician and to the claimant's symptoms." *Id., quoting* TR 33, *referencing* TR 591.

Defendant responds that the ALJ "expressly did not fully accept" Dr. Gulbenk's opinion,

and argues that "a sensible reading of the ALJ's rationale is that he accepted Dr. Gulbenk's reasoning about credibility but not her conclusion that plaintiff had no severe impairments." Docket No. 17 at 11.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the medical opinion and the reasons for that weight. SSR 96-2p.

In her DDS evaluation, Dr. Gulbenk noted Plaintiff's medical diagnosis of interstitial cystitis, but questioned Plaintiff's credibility regarding her statements about the limitations caused by her symptoms. TR 591. In so doing, Dr. Gulbenk highlighted the inconsistencies between Plaintiff's statements and the medical evidence, as well as the psychological examination conducted at Dr. Sherrod's office by Bobbie Hand, M.S., which noted that Plaintiff appeared to exaggerate her symptoms during the examination. *Id.*; *see also* TR 576. While the

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

ALJ regarded the opinion of Dr. Gulbenk as "particularly well reasoned and supported by reference to the medical evidence" in its discussion of Plaintiff's credibility, he did not fully accept Dr. Gulbenk's conclusion that Plaintiff had no severe physical impairments because she did not "give adequate weight to the opinion of the examining/consulting physician and to the claimant's symptoms." TR 33, *referencing* TR 588, 591.

With regard to Dr. Mehta's consultative opinion, the ALJ explained:

> [Dr. Mehta] checked boxes on a form indicating that due to stress incontinence the claimant could lift no more than twenty (20) pounds occasionally or twenty-five (25) pounds frequently, could stand or walk less than two (2) hours during a work day, and could sit less than six (6) hours during a work day. I do not fully accept this opinion for several reasons. First, there is absolutely no explanation either on the form or in the formal report for the opinion that the claimant is severely limited in the ability to sit, stand and walk. Second, the restrictions are inconsistent with the physician's essentially normal physical examination. Finally, it is clear that the physician was somewhat careless in completing the form, as he inconsistently indicated that claimant can lift no more than twenty-five (25) pounds frequently or twenty (20) pounds occasionally.

TR 33, *referencing* TR 569-70.

As can be seen, the ALJ did not contradict himself with his consideration of, and weight accorded to, the opinions of Drs. Gulbenk and Mehta. Moreover, the ALJ explained the weight accorded to these opinions and the reasons therefor. The ALJ's consideration of these opinions was proper; Plaintiff's argument on this point fails.

## 4. The ALJ's Questioning of Vocational Expert and the Existence of a Significant Number of Jobs that Plaintiff Could Perform

Plaintiff argues that the ALJ erroneously relied on the VE's testimony that Plaintiff could perform jobs that exist in significant numbers in the national economy, because the ALJ's

hypothetical question posed to the VE was flawed. Docket No. 16 at 14. Specifically, Plaintiff contends that the ALJ used inconsistent terminology, having found that she required "ready access" to bathroom facilities but including only a requirement for "easy access" to bathroom facilities, which the ALJ "denoted meant 'the same access you'd have in a typical home.'" *Id.* Plaintiff contends that the terms "ready access" and "easy access" are not synonymous because "ready access suggests immediacy, while "easy access" suggests proximity. *Id.* Plaintiff further takes issue with the ALJ's posed "hypothetical question to which the VE identified these occupations [because it] did not include the requirement of immediate access to bathroom facilities," which is problematic because the VE testified that the inclusion of the limitation of immediate access to bathroom facilities would preclude work. *Id.* Finally, Plaintiff contends, "the jobs identified by the VE are not jobs typically performed in a home, and there is no evidence that bathroom facilities in the work environments where they are performed are comparable to those found in a home, which is what the ALJ said he meant when he used the term 'easy access.'" *Id.* at 14-15.

Defendant responds that the distinction between "easy access" and "ready access" was explicitly clarified by the ALJ at the hearing, such that the VE's response to the question was proper. Docket No. 17 at 12. Defendant also contends that there is no difference between the phrases "easy access" and "ready access" with regard to the question of whether jobs were available to someone with Plaintiff's RFC. *Id.* Defendant notes that "the ALJ patently did not find" that Plaintiff needed such frequent use of a restroom that she could not actually perform light work or make a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* at 13. Defendant contends that Plaintiff had the burden of demonstrating

her RFC but did not show that she was as limited as she claimed. *Id.*

In the case at bar, the ALJ queried the VE as follows:

Q.    . . . If I were to consider a 41-year-old worker who had an 11th grade education and the same past relevant work as Ms. Roberts, who is limited to light work and could only work in an environment which provided for easy access to bathroom facilities, would a worker with those characteristics be able to perform any of the claimant's past jobs?

A.    Okay. When you say easy access, judge, do you mean, like, within a few feet or across a plant?

Q.    I don't mean across a plant. I mean, the same access you'd have in a typical home, so - -

A.    Okay. Well, its going to preclude mostly, like, the floater. She wouldn't really have very easy access to - - even that - - and the packing and the assembly will be out. I think given this RFC, you know, just easy access only, order clerk would be available at sedentary and semi-skilled. It's pretty easy access as a nursery attendant, should that be vocationally relevant, and the property clerk at light and skilled would be available because they're all in a [*sic*] office where the bathrooms would be close by. Any of the plant work, production or floating, any - - even custodian might or might not. So I'm just going to say all those, the property clerk, the order clerk, and the daycare attendant. Or, nursery school attendant.

Q.    And - -

A.    They're available.

Q.    - - property clerk was a part of the job that included the property custodian title. Is that right?

A.    Yes.

Q.    And also order clerk was a part of the job that included the packer responsibilities.

A.    That's right, and I'm not sure how it was split up on how much time she did each one.

Q.    Okay.

TR 63-65.

The ALJ ultimately determined that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only work at jobs which allow ready access to bathroom facilities." TR 31. The ALJ also ultimately found that "[b]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." TR 34. In so doing, the ALJ relied on the VE's testimony describing the availability of a significant number of appropriate jobs. TR 34, 66-67. Specifically, the ALJ discussed the VE's testimony that "given all of these factors the individual would be able to perform the requirements of representative occupations such as sorter 1,400/40,000; laundry worker 1,500/50,000; and stock checker 1,800/60,000." *Id.*

As can be seen in the exchange quoted above, the ALJ did not conflate the terms "ready access" and "easy access" but rather, clarified his definition. Because the ALJ clarified the language used in his hypothetical question posed to the VE, the ALJ properly relied on the VE's answer to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform. Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge